May it please the court. Counsel, I'm here on behalf of Jennifer Paskert who has brought her discrimination claim against her former employer. She based her claim on three counts. One is the hostile work environment or hostile workplace. As a part of that there was also she had a claim for discrimination based upon gender and finally a claim for retaliation. The court's aware that the lower court dismissed all three of those claims. The first hostile work environment she concluded that there was insufficient evidence for discriminatory conduct against Miss Paskert. He concluded that that had been waived because there wasn't enough in the brief to support the claim and so and thirdly that the retaliation charge was it was not brought up in the minutes as part of the administrative proceeding. As let me take up first the hostile work environment claim if I may. The hostile work environment claim you're very well aware of the elements. The key to such a claim is whether or not the conduct is severe and pervasive and it has to have frequency, severity, it has to be humiliating conduct and it has to interfere with her job performance. I submit to the court that there are findings that support all of those matters and in the Williams v. Heron case the court this court concluded that that is ultimately a jury question as to the severity and pervasiveness. Let me ask you a preliminary question. I know that it's not extensively briefed here but the because of sex part of it which is that the supervisor here seemed to be Mr. Burns seemed to be an equal opportunity abuser or at least that's that's an inference we can draw from the record. He abused virtually every salesperson that was under him and so is does is is there a genuine issue material fact that somehow she was treated your client was treated differently than others? Yes I think there was. I think she was targeted by Mr. Burns and you have you can look only at what the lower court concluded that he was in fact abusive manager like he stated but he referred to females derogatorily. He threw things. He stated he should never hire a woman. This is what the district court said. He frequently stated he could make enough cry because she was a female and thought it was funny to do so. He discussed his sexual conquests. He rubbed her shoulders. He said he could have her. I mean he wasn't doing this to the other employees. He was targeting her. He made her life so miserable that she had to leave the workplace go home because she was so upset and it wasn't a matter of a one occasion a two occasion. This was frequent. It was almost daily as shown in the record. Now I think there's a genuine issue of material fact as to whether or not there's a hostile work environment present in this case and that ultimately is a jury question and that's what the court concluded in the Williams case that was cited that the jury ultimately has to weigh whether or not there's conduct sufficient sufficiently pervasive and severe to create a hostile workplace. So I think that that issue I feel very bad. In fact the district court almost went to the point and if you read his memorandum opinion of concluding there was a hostile work environment and then he says but the 8th circuit has a higher bar than what's present. Well the 8th circuit's bar is set by the supreme court in the Duncan case and the Duncan case is well our case is the Duncan case but the supreme court case that that our Duncan decision is based on is is quite such a quite quite a high bar for hostile work environment cases. So we're going to condone this behavior for the supreme court and the supreme court authorized this cause of action through his and meritorious identified it to be quite limited in their own in their own words. Okay so it is quite limited but doesn't the jury have a right to pass upon whether or not your evidence is sufficient to establish a a hostile workplace? Is that the function of the court? Is the bar so high that we can never bring these actions? I mean to me I look at these facts and this this is appalling what a supervisor can get away with what an employer can get away with and we say oh okay you didn't meet your bar. Well it's a bar so high that if no one reaches it what good is that cause of action? I think that is is really important. This is an important case to bring before a jury to let the jury speak as to how the employer treated this person. Now the court then went on to conclude in a footnote that somehow plaintiff waived her right for discrimination based upon gender claim. I've always understood that a hostile work environment claim explicitly and as necessary requires discrimination based upon gender. You don't have this hostile work environment claim unless you have discrimination based upon gender. That's an essential element. The question is then how pervasive and severe it is which is the issue we just talked about. In the Harris case the Supreme Court has said that it is a necessary essential element of a hostile workplace. So that is of the record. We also have. Are you talking now about the disparate treatment claim that the district court said you had waived by not arguing? Yes I am. Well I mean I guess I mean you're right. All three of them or both of them are because of sex. But the problem I'm having is there are different theories that can prove that. So you could have a disparate impact claim. You could have a disparate treatment claim. You could have you know a hostile work environment claim. And I think the district court was saying that you didn't differentiate between them. So while you argued the hostile work environment claim you really didn't argue the disparate treatment claim. Why is that wrong? It's wrong because if the court looks at the presented in this case, the underlying record, it itself concluded that the plaintiff was never received sales training in a manual. That her co-employee was prevented from helping her shadow to learn how to sell cars. She did not have the opportunity to sell. She was called into the There are ample facts in the records that substantiate a discrimination based upon. Well I don't necessarily disagree with you but did you did you press that point? The all those facts you're talking about now in the context of a of a disparate treatment claim? In my resistance I said that she's hostile work in place and discrimination. Okay. And the court criticized the fact that the emphasis in the brief were on other issues and not on that. And that's basically the court said well if you if you don't emphasize that in your brief then you're done. Let me ask you I just want to there I think there's another problem with the disparate treatment claim which is AutoSmart presented another a number of legitimate non-discriminatory reasons for what you term to be discrimination or disparate treatment. And my sense is is that one of the problems is even if you didn't forfeit it you didn't necessarily answer all of those legitimate non-discriminatory reasons and so you kind of left some standing. Isn't that an independent reason to to affirm on the on the disparate treatment claim? No because we have direct evidence of discrimination and there's no McDonnell Douglas burden shifting under that scenario. If it's indirect evidence yes but if direct evidence of discriminatory treatment they can rebut that and show some that that wasn't the case. But we we don't have to address their pretextual nature of it if we have direct evidence. At least that's my reading of the case in the case law. What do you consider to be direct evidence? I mean whether something's direct evidence. I'm curious as to what you characterize as direct evidence. Let me turn to the memorandum decision of the lower court judge and he found that she was never given proper training. She was called into the office to answer phones. She was told not you know she was encouraged to shadow but never was given the opportunity. That's all evidence that she was treated differently than the male employee. But that's not direct evidence. That still requires an inference. Whereas if for example you know the supervisor were to say God you know she's a woman I don't want her doing this because she can't do it as well as others or something like that. That I think would be direct evidence. Do we have anything like that here? The evidence that I presented by way of my factual statement is what I think is direct evidence. Furthermore the court stated, lower court, the work environment was certainly hostile and that there was evidence that provides some support for the claim of discriminatory treatment based upon sex. So the lower court found that there was evidence of discriminatory disparate treatment as this court phrased it. So I think that the evidence sustains that. The last thing I want to talk about just briefly and that's the retaliation charge. Apparently the I think retaliation was brought up in a narrative to the original complaint. The narrative was solicited by the Iowa Civil Rights Commission and her answer in that narrative establishes that she was treated differently because she was complained and then the male employee and therefore there was retaliation. This can be inferred from that statement. The defendant has taken the position, defendants have taken the position that the narrative was not part of the complaint and that is not true. The narrative is if in fact Civil Rights Commission's job is to try to the purpose of all of these complaints it isn't to give defendants notice. It's to give the commission an opportunity to evaluate the claim. That's why they send out this questionnaire. So I think that as far as I'm telling the court today is that this narrative was in fact a part of her complaint procedure to the ICRC and therefore retaliation was established. I would like to reserve the balance of my time. Thank you. Thank you Mr. Dick. Mr. Smith. Good morning your honors. May it please the court. Patrick Smith from Des Moines, Iowa. I represent four of the five defendants sued in this matter. AutoSmart Inc., Chemda Motor Company and two individuals Brent Waringa and Ken Chemda. My clients are asking this court to affirm Judge Strand's grant of summary judgment on all three of the claims Mrs. Paskert asserted in this lawsuit with respect to retaliation. Mrs. Paskert failed to exhaust her administrative remedies because she did not present to the Iowa Civil Rights Commission a complaint or facts showing a complaint of retaliation. Would you respond to appellate counsel's statement that that actually was raised in a narrative? Sure your honor. The relevant evidence in the record is at the appendix starting at page 248. That's Mrs. Paskert's Iowa Civil Rights Commission complaint form and that form has two potential places as your honor indicated. One is specifically a question, question number 18 that asks whether the employee reported discrimination or participated as a witness and then suffered an adverse action and she left that question blank. And then it doesn't matter that there's no check box for retaliation? That's right. That seems the person how if you this is a layman filling out a form how are they supposed to know the technical legal things that they can that they're doing may have this kind of preclusive effect later? There's no doubt your honor this court's precedent construes an administrative complaint like this charitably given the fact that sometimes these individuals aren't represented by counsel they may not understand the legal terms. That being said they still have an obligation to present even if they don't understand the legal terminology some facts and the Iowa Civil Rights complaint form in fact gives them that opportunity at the appendix in this record it's appendix page 251 where it asks the complainant to set forth in narrative form the facts that it believes support its claims that it's making. So it's got a list of questions, check boxes if you will, a list of questions and then thirdly a narrative and the narrative Mrs. Paskert provided didn't provide any facts that would allow either the commission or my clients responding to the complaint to discern that retaliation is being alleged. As the court knows to have retaliation you have to have some kind of legally protected activity. She goes to HR and complains about discrimination or harassment. She files the charge and as a consequence there's some kind of adverse action to her. The complaint that she submitted doesn't have any facts showing she engaged in that kind of legally protected activity as a consequence there was an adverse action and this court's precedents do say even though they should be looked at charitably the complaint is you can't find something or make some up something that simply isn't in the complaint and that's what the case is here. I want to respond as well to Mr. Deck's argument concerning the questionnaire that he contends may have raised facts showing retaliation. In this record it's at the appendix pages 148 to 151. There are several important aspects of the questionnaire that are relevant. Number one is the questionnaire is not a part of the original administrative complaint. That's a document that the commission sends to the complainant and sends another questionnaire to the respondent to provide additional information. And you can tell from the record that the questionnaire responses from a fax line on the top were submitted by Mrs. Paskrich's lawyers about a month, a little over a month, after she presented her initial claim. And this information that goes only to the commission and is supposed to help them investigate the claim. The responding employer doesn't get the questionnaire responses. And part of the reason for the requirement of exhaustion of remedies is to give the commission notice, of course, but also to give the responding employer notice of what is being claimed here. So even if Mrs. Paskrich had presented facts in the questionnaire that were germane to retaliation and we don't think she did, there aren't any facts in there, my clients never got that information. So they would never have had an opportunity to respond to a claim of retaliation. So based on the record here, what's in the Iowa Civil Rights Commission form, there simply isn't enough information to have put the commission on notice, to put my clients on notice that retaliation was being alleged. She didn't exhaust her remedies and that's why the court was correct granting summary judgment on that claim. On the sexual, or excuse me, the hostile work environment claim, the harassment claim, one of the things that concerns me when I read the district court's order, and you can tell me that I shouldn't be concerned, is the district court seems to really look for things that are in the purient interest, some sort of sexual innuendo or something of that nature, but we have, you know, there can be a hostile work environment claim simply if a supervisor repeatedly treats somebody differently because of sex and makes their life miserable, even aside from sexual innuendo and other types of advances. And so I'm wondering if the district court was a little misguided in what the district court was looking at in this case. Your Honor, we don't think he was. Two reasons. First, even though Judge Strand's opinion focuses on the severe and pervasive aspect of it, your question to Mr. Deck about the because of sex part of it is an important one, and we presented that to the judge in our briefing in the summary judgment. He didn't rely upon it in his opinion, but it does give independent grounds for this court to affirm, and that is Mr. Burns, the supervisor, there was certainly a fair amount of evidence of him having a bad temper. Some would characterize him as abusive. He yelled at the employees, but there's quite a bit of evidence that he treated everybody that way. Mr. Deck referred to the record being replete with evidence of sexual harassment, but the kind of conduct that was there every day was something that affected male and female employees alike, and we're not trying to excuse his behavior, obviously, but that's really what the evidence shows. And yet he did say he wished he hadn't hired a woman, right? I'm sorry, Your Honor? He did say that he wished he had not hired a woman. There is, correct, and he denied. There is evidence in the record that Mr. Burns said that he wished he had not hired a woman because she was too emotional. There's, I believe, one or two instances where he's alleged to have uttered those things. There's no doubt about that, but if you look at the totality of the conduct, he's doing these things to male and female employees alike when their male and female employees are present, and it's best summed up, we think, in the record. This is at the separate appendix that the defendants submitted at page 18. This is Mr. Bjorklund's, James Bjorklund's testimony, who was a fellow worker, and he said, quote, that he put up with the same stuff that Mrs. Paskert did and that Dan Klein and other previous male salesmen put up with, and that another previous male salesman also quit because of Mr. Burns' abusive conduct. So again, not excusing it by any means, but this is something that male and female employees, for the most part, were subject to. If we were to, if, you know, we have to So if, if we were going to affirm on one ground, which, which do you think is stronger on this record, the because of sex or the pervasiveness of the, of the conduct? Well, that's a difficult question, Your Honor. Judge Strand obviously relied on just the severe and pervasive, and it's our view that that, that's a correct, that would be an appropriate ground to affirm on. Based on this while there's certainly not a bright line test to determine what crosses that threshold, it's nonetheless a high threshold that a plaintiff has to cross in terms of the nature of the conduct, whether it's just verbal conduct, how long it occurs and how many times it occurs, and whether it may involve some kind of touching or not. And, and the record in this case shows maybe five or six different aspects of conduct that could be, or no doubt, maybe are based on sex. The, the comments that Judge Graz identified about he wish he hadn't hired a female employee. Don't, unlike many of these cases, don't, isn't there an allegation here of actual physical contact? There's the required hugs and touching on the shoulder and such? Your Honor, I believe there's one incident of physical contact in the record that is Mr. Burns touching Mrs. Paskert on the shoulders. He was asking for an apology, something like that, the record says. And he, he touched her shoulders and asked for a hug and there's no evidence that she gave him a hug. So that, the touching is one incident where Mr. Burns touched Mrs. Paskert on her shoulders. And the cases that are described in our briefs, or cited in our briefs, and that Judge Strand relied upon, the touching, some of them involve much more extensive touching than just one time. And the nature of the touching as far as where the, on the body, the alleged harasser touched is, is more sensitive. Here we have one touching, and based on the precedents that this, this court has established, it simply hasn't risen to the level of the severe and hostile environment necessary to, to go to the jury on a sexual harassment claim. That being said, and I think I've argued already, we think the alternative ground would be most of the bad conduct by Mr. Burns, the abusive conduct, was not based on sex but was applied to male and female employees alike. Finally, I want to address the sex discrimination, the disparate treatment claim that Judge Strand ruled in footnote 12. Essentially, the plaintiff had not presented that claim at all, and so there was no need to really rule on it. And that finding as well should be affirmed. A disparate treatment claim is factually distinct, even though harassment and disparate treatment are both forms of sex discrimination, they are analyzed differently. And in order for the plaintiff to defeat a motion for summary judgment, he's required to identify evidence of disparate treatment and present arguments about why these facts would generate a genuine dispute for trial on the fact that she was treated differently because of her sex as far as employment decisions like the training that she claimed she didn't get, the having to answer the phones that she claimed happened, or there are events that may have occurred, assuming that's true, but that doesn't identify what the motive, Mr. Burns' motive was. Did he do those things, or was Mrs. There isn't any argument, virtually at all, on any of those points. There's some, as we look through the summary judgment briefs, and there's two different ones because Mr. Burns filed a separate motion for summary judgment, but in response to my client's motion for summary judgment, the plaintiffs offered four brief points, not one of them addressed disparate treatment. In the brief responding to Mr. Burns' separate motion for summary judgment, there's a couple of headings that mention discrimination, but it combines those with retaliation and with harassment, so it's kind of hard to understand what the heading is talking about. And then in the body of the brief itself, there's simply one paragraph where he says she didn't get the sales training that she wanted, she didn't get the time on the sales floor, and that's sex discrimination. And we believe this court's precedent that Judge Strand relied upon is that the court doesn't have to go searching the record to find facts that might create a genuine dispute of disparate treatment. It doesn't have to determine, try and figure out what the arguments are. There's no argument in the or there certainly wasn't a pointing out of what the plaintiff claimed the direct evidence was. There wasn't a discussion whether she satisfied the prima facie case of discrimination. There was no argument that the defendant's stated reasons for her demotion and her termination were somehow pretext for sex discrimination. What about the comment that Judge Graz referenced about I wish I wouldn't have hired a woman? Is that direct evidence of discrimination? Well, I suppose in theory it could be, Your Honor, but the plaintiff didn't point to that evidence as evidence of disparate treatment. So unless he makes an argument and says, here's the direct evidence, and whether evidence is direct or circumstantial can sometimes be kind of gray. It's certainly not always clear. But if he's going to contend that that's direct evidence and therefore he doesn't have to rely on the McDonnell-Douglas burden shifting, he ought to state that in his brief and say, we say this is a direct evidence case, here's the direct evidence. Mrs. Pastor didn't do that. Nor did she go on and say, this also we could analyze this under the circumstantial burden shifting case of McDonnell-Douglas. So here's my evidence to support the prima facie case. She didn't do that. Here's why the employer's stated reasons for its actions are pretext. There was none of that. So the judge concluded properly, we believe, and I see my time is up. May I conclude my argument? Yes. Judge Strand was correct in stating that it's not his obligation to comb the record to find those disputes and to find those arguments. That's the plaintiff's. So for all these reasons, we ask the court to affirm the district court's grant of summary judgment. Thank you. Thank you, Mr. Smith. Mr. Deck, your rebuttal. Thank you, Your Honor. May it please the court. I was earlier asked whether there's direct evidence of discrimination, disparate treatment, and I was confining myself in response to that to the non-hostile findings made by the district court. But obviously, all of the hostile allegations or findings that were made that would show direct evidence, which would include his statement that I should never have hired a woman, that I want to make you cry every day and have you leave, that he could have her. I mean, those things to me are direct evidence. Are we supposed to infer something else other than what he was directly telling her? It was an abusive behavior. As far as the retaliation is concerned, counsel seems to think that somehow that narrative that's required by the ICRC is to give them further notice of the claims. Well, I remind counsel that the plaintiff never gets the response of the employer to her claim. So what notice is there? Actually, the standard is that the agency has a right to investigate, and the EOC does it with a complaint plus an interview. The ICRC does it with a complaint plus a questionnaire narrative. So the narrative is part of the complaint. Now, we rely specifically upon paragraphs 11, 12, and 13 in that particular narrative to show that there were facts that she was treated differently because of her complaints. She was demoted and her male employee was not. So that, I think, is our argument on that. If one looks at the total record in this case, I think the court should leave with the impression that this conduct by this abusive supervisor as concluded by the district court was an effort to get her to quit voluntarily so he didn't have to fire her. And I think that that kind of behavior should never be allowed or condoned by any court. She should have her day in court, and that's why we're here today. I ask for you to please reverse the lower court in this matter. Thank you much. Thank you, Mr. Deck. Thank you also, Mr. Smith. We appreciate the argument you've provided to the court this morning. In the briefing which you have submitted, we will take the case under advisement. Okay, if you'll excuse me.